the Illinois claimants could never have proved their ownership of any part of the fruit replevied. The affirmative act of the carrier, therefore, enabled the claimants to secure a result which they could not have secured through the legal adjudication which the rule of law manifestly contemplates, and the same stipulation canceled the bond which the law requires for the protection of the consignee in just such an emergency. These facts, together with the tardiness of the notice, bring the carrier outside the protection of the rule, because nondelivery to the consignees was the result, not of legal adjudication, but of acts amounting to "collusion, connivance or consent" on the part of the carrier. Even the consignee's failure to defend after notice could not justify the carrier in thus disposing of the matter by stipulation. Savannah Railroad Co. v. Wilcox, 48 Ga. 432, is not persuasive authority to the contrary.

In view of the conclusions above stated, it is unnecessary to consider further the question whether the writ of the Municipal Court was, under the circumstances indicated, valid and regular on its face.

Judgment may be entered for the plaintiffs for $1,057.50, with interest. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal. Submit findings on 3 days' notice.

---

(88 Misc. Rep. 399)

### In re HIRSHFELD'S ESTATE.

(Surrogate's Court, New York County. December 10, 1914.)

GUARDIAN AND WARD (§ 15*)—APPOINTMENT OF GUARDIAN—BOND OR SECURITY —STATUTES.

 Laws 1914, c. 520, amending Code Civ. Proc. § 2650, providing for protection of an infant's property by deposit in the name of a guardian subject to the surrogate's order, and for security through a third person to be selected by the surrogate, without any provision for such person's compensation, and dispensing with security by guardians, is in conflict with Code Civ. Proc. § 2739, relating to payment of distributive shares of infants, and a guardian of an infant entitled to a legacy and distributive share less than $2,000 would be required to file security in double that amount, to be approved in conformity with that section.

 [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 56–64; Dec. Dig. § 15.*]

Application, in the matter of the estate of Robert Hirshfeld, for letters of guardianship of an infant. Hart Hirshfeld appointed guardian, on filing approved security.

Harry A. Gordon, of New York City, for petitioner.

FOWLER, S. This is an application for letters of guardianship of an infant entitled to a legacy or distributive share under $2,000; such letters to be issued without security, pursuant to the new section 2650, c. 520, Laws of 1914. This is a most exceptional act, and it has caused me very great anxiety and concern.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 2650, C. C. P., provides in substance, in counties having a city of the first or second class, for that partial protection of an infant's property which is afforded by having it deposited in the name of the guardian, subject to the order of the surrogate; but if the county has not within its boundaries a city of the first or second class, and the infant's estate is less than $2,000, no bond seems to be required of the guardian, and no protection of any kind is afforded to the infant. In such cases there is no restriction or limitation placed upon the right of the guardian to dispose of the infant's property, and no security for the infant. In my jurisdiction, in a county containing a city of the first class, section 2650, C. C. P., makes some sort of substitute for security in the instances where guardians are not required to give security, through the co-operation of a third person, to be selected by the surrogate; but no provision is made for his compensation, and no proper third person could be induced to act as a volunteer.

I perceive how detrimental a construction of the new law dispensing with security by guardians may prove, not only to the infants concerned, which is our first consideration, but to the taxpayers of this county on whom the expense of any adequate execution of the law must ultimately devolve, a fact which could not, I think, have been ignored by the Legislature or the promoters of the bill. I am familiar with the history of this new act, and I think I comprehend its scope and purpose. I may note, incidentally, that the new section, if construed without reference to the context of the Code, is likely to impose on me obligations and duties far in excess of the ordinary obligations or duties of this onerous office, and of a kind I do not feel willing to assume unless imperatively necessary. The new law is also defective, in that it is so framed as to embrace, and yet leave out of apparent consideration, conduct of such guardians of great moment to infants concerned. But what I most fear is that construction of the new law which will jeopardize the estate coming to infants protected, or rather not protected, by these bondless guardians. The sort of quasi public proctor evidently contemplated by the act as a substitute for security, unless a salaried and bonded official, would be no protection to an infant whose guardian was not under any legal obligation, reinforced by adequate sureties. Up to this moment the office which I characterize as a sort of quasi public proctor, or, in other words, the "person to be designated jointly with the guardian," has not been created, and, in my opinion, is not likely to be created in this county so long as I remain in this place. In my judgment such an office would be neither in the interest of the infant nor of the public. Yet without such an office the section seems to me to be practically unworkable.

The new section 2650, standing alone, is claimed to contemplate that a guardian appointed without bonds shall be permitted to keep the infant's estate without placing it at interest, and, indeed, at the cost of the county for storage. If the Legislature has the power—which I doubt—to make this a county charge, such a construction is counter to the prior practice of all courts of justice and distinctly at variance with public policy. It is a construction which ought not to be accorded, as

it seems to me, if the infant's interests are to be considered. I am not surprised to find, therefore, that the Supreme Court of this state has in effect disapproved of that construction of the new law which avoids the giving of security by the guardian and has refused to recognize it as in any way binding on that court. Haug v. Hewitt (Kings County) 87 Misc. Rep. 67, 150 N. Y. Supp. 236. This is not strange, if we remember that sections 474 and 475, C. C. P., requiring security of guardians ad litem, have been the generally received statutory measure of guardian's obligations, as I have already intimated in Estate of Seiffert in November last (Sur. Decs. 1914, p. 1135).

But the controlling fact on this application is that the new section is in conflict with section 2739, C. C. P., which I think binds me. I should be reluctant to ascribe to the Legislature an intention to leave infants who are entitled to small legacies or distributive shares absolutely unprotected against the misconduct of their guardians, or the misuse or wrongful application of their estates by such guardians. It is more reasonable to assume that it was the intention of the Legislature to limit the application of section 2650 to those comparatively infrequent cases where an infant becomes entitled to property by virtue of the provisions of a deed of trust or as a gift, and that when the infant becomes entitled to a legacy or distributive share of an estate the general guardian appointed for the purpose of receiving such property may qualify in accordance with the provisions of section 2739, C. C. P. But I will reserve the consideration of the excepted class of cases until one comes before me.

Where two sections of the same act are in hopeless conflict, I am permitted to follow that one which is most consistent with the justice long administered in this state and with the public policy frequently expressed by the courts of the state.

In this matter Hart Hirshfeld will be appointed guardian on filing security in double the amount, to be approved by me in conformity with section 2739, C. C. P.